IN THE UNITED STATES COURT FOR THE DISTRICT OF UTAH

CENTRAL DIVISION

| | |
|---|---|
| FRANK GILLEN, an individual,<br><br>    Plaintiff,<br><br><br><br>        vs.<br><br><br><br>E.B. MILLER, an individual and PACE EXPLORATION, L.L.C., an Oklahoma limited liability company,<br><br>    Defendant.<br><br>_____<br><br>E.B. MILLER, an individual and PACE EXPLORATION, L.L.C., an Oklahoma limited liability company,<br><br>    Third-Party Plaintiff,<br><br>        vs.<br><br>RIC PETROLEUM, INC., a corporation,<br><br>    Third-Party Defendant. | MEMORANDUM DECISION AND ORDER GRANTING MOTION OF RIC PETROLEUM, INC. TO DISMISS FOR LACK OF PERSONAL JURISDICTION<br><br><br><br><br><br>Case No. 2:04-CV-717 TS |

This matter comes before the Court on Third-Party Defendant RIC's Motion to Dismiss for Lack of Personal Jurisdiction. The Court heard oral argument on the Motion on January 23, 2006. Having considered the briefs and accompanying documents, oral arguments, and being otherwise fully informed, the Court will grant the Motion.

## I.  FACTUAL BACKGROUND

Pace is an Oklahoma corporation with its principal place of business in Tulsa, Oklahoma. RIC is a Delaware corporation with its principal place of business in Colorado. In the spring of 1999, Pace and RIC entered into communications, occurring between Colorado and Oklahoma, concerning the possibility of developing and drilling the Isaiah #1 Well ("the Well"), located in Pottowatomie County, Oklahoma. The parties entered into an agreement concerning the Well. The relevant part of that agreement was that RIC would drill and operate the Well and Pace would obtain funding. They agreed that each would own 25% and that a 50% working interest in the Well would be sold to investors. These investors became known to RIC as the Utah Investment Group.

Previously, the Court has made the following findings regarding the procurement of investments from the Utah Investment Group, in a ruling which denied Miller and Pace's Motion to Dismiss for Lack of Personal Jurisdiction.[1] The Court found that Defendant Miller, an employee of Pace, was an agent of Pace and that Miller had contacted Plaintiff in June of 1999 and tried to convince Plaintiff to raise capital for the Well from Utah investors. The Court found that Miller and an expert, Mr. Pfannensteil, met with Plaintiff and other Utah investors in order to convince them to invest in the Well. The Court also found that Plaintiff and the investors

---

[1]Docket No. 22.

relied upon representations made at the Utah meeting and invested $176,000 in the Well.  Based

on these findings, the Court found that it had personal jurisdiction over Defendants Pace and

Miller.

Pace received funds from the Utah investors and deposited them in an account at Sprint

Bank in Tulsa, Oklahoma.  Pace set up this account.  During the development of the Well, Pace

paid the costs of drilling and completion from funds from this account, which had been received

from the Utah investors.  RIC submitted requests for payment to Pace and Pace made payment to

RIC with funds from this account.  RIC also had control over the production revenues from the

Well.

RIC has attached to its Motion an unsigned agreement between Miller and Pace, and RIC.

That agreement provides that RIC was not to deal with any investors provided by Miller, either

directly or indirectly.  RIC was not to deal with any person providing funding without the

express written consent of Miller.  RIC was not to enter into a business arrangement with any

investor without Miller's written consent.  If RIC breached this agreement, then Miller would

have the right to pursue damages and injunctive relief.  As noted above, however, this agreement

was never signed by anyone, but Pace does not dispute RIC's statement that the agreement was

adhered to.

Additionally, RIC notes that it has never conducted business in Utah.  It has never been

registered to do business in Utah.  It has never owned, leased, or controlled property in Utah.  It

has never maintained any employees, offices, agents, or bank accounts in Utah.  RIC has never

had any shareholder, director, or managing agent reside in Utah.  It has never maintained a

telephone or fax number in Utah.  It has never advertised or solicited business in Utah.  An agent

for RIC has never traveled to Utah for any business purpose, although Derek Richards had

3

previously traveled through Utah on his way to California.  Finally, RIC has never paid taxes in

Utah, has never visited potential customers in Utah, has not recruited potential employees in

Utah, and has never received substantial revenue from persons residing in Utah.

## II.  MOTION TO DISMISS STANDARD

Third-Party Plaintiff Pace carries the burden of establishing personal jurisdiction over

Third-Party Defendant RIC.[2]  "'To obtain personal jurisdiction over a nonresident defendant in a

diversity action, a plaintiff must show that jurisdiction is legitimate under the laws of the forum

state and that the exercise of jurisdiction does not offend the due process clause of the Fourteenth

Amendment.'"[3]  "It is frequently helpful to undertake the due process analysis first, because any

set of circumstances that satisfies due process will also satisfy the long-arm statute."[4]

To satisfy the constitutional requirement of due process there must be "minimum

contacts" between the defendant and the forum state.[5]  "When the evidence presented on the

motion to dismiss consists of affidavits and other written materials, the plaintiff need only make

a prima facie showing."[6]  "The allegations in the complaint must be taken as true to the extent

---

[2]*Kuenzle v. HTM Sport-Und Freizeitgeräte AG*, 102 F.3d 453, 456 (10th Cir. 1996).

[3]*Soma Med. Int'l v. Standard Chartered Bank*, 196 F.3d 1292, 1295 (10th Cir. 1999) (quoting *Far West Capital, Inc. v. Towne*, 46 F.3d 1071, 1074 (10th Cir. 1995)).

[4]*Systems Designs, Inc. v. New Customward Co.*, 248 F.Supp. 2d 1093, 1097 (D. Utah 2003).

[5]*World-Wide Volkswagen Co. v. Woodson*, 444 U.S. 286, 291 (1980).

[6]*Bell Helicopter Textron, Inc. v. Heliqwest Intern., Ltd.*, 385 F.3d 1291, 1295 (10th Cir. 2004).

they are uncontroverted by the defendant's affidavits.  If the parties present conflicting affidavits,

all factual disputes are resolved in the plaintiff's favor . . . ."[7]

The "minimum contacts" standard may be met by a finding of either general jurisdiction

or specific jurisdiction.  Here, Pace argues that the Court has specific jurisdiction over RIC.

When the "defendant has 'purposely directed' his activities at residents of the forum," courts in

that state may exercise specific jurisdiction in cases that "arise out of or relate to those

activities."[8]  In order for the Court to find specific jurisdiction, there must be "some act by which

the defendant purposefully avails itself of the privilege of conducting activities within the forum

State, thus invoking the benefits and protections of its laws."[9]  "Generally speaking, specific

jurisdiction must be based on actions by the defendant and not on events that are the result of

unilateral actions taken by someone else."[10]

### III.  ANALYSIS

A.      CHOICE OF LAW

RIC has argued that Oklahoma law applies to the partnership and agency issues raised in

this Motion.  Neither party has entered into a full choice of law analysis.  The Court, however,

will conduct its own choice of law analysis.

---

[7] *Kennedy v. Freeman*, 919 F.2d 126, 128 (10th Cir. 1990).

[8] *Burger King v. Rudzewicz*, 471 U.S. 462, 472-73 (1985).

[9] *Hanson v. Denckla*, 357 U.S. 235, 253 (1958) (citation omitted).

[10] *Bell Helicopter*, 385 F.3d at 1296.

Since Utah is the forum state, Utah's choice of law provisions control.[11]  Utah has

adopted the most significant relationship approach as set out in the Restatement (Second)

Conflict of Laws.[12]  In order to apply the most significant relationship approach, the Court must

first characterize the nature of the claim.[13]

The Restatement (Second) Conflict of Laws states that, in partnership and agency cases,

the law is selected by application of the rules of two sections of the Restatement

(Second)[14]—those rules relating to contracts where the parties have chosen the applicable law[15]

and those rules relating to contracts where the parties have not chosen the law that is to govern.[16]

Here, there is no argument that the parties have agreed to a choice of law provision.  Therefore,

the Court must examine the factors listed in § 188.

Restatement (Second) Conflict of Laws § 188 sets forth a number of relevant factors for

the Court to consider, including: (1) the place of contracting; (b) the place of negotiation of the

contract; (c) the place of performance; (d) the location of the subject matter of the contract; and

(e) the domicile, residence, nationality, place of incorporation and place of business of the

parties.[17]

---

[11]*Waddoups v. The Almagamated Sugar Co.*, 54 P.3d 1054, 1059 (Utah 2002).

[12]*Id*.

[13]*Id*.

[14]Restatment (Second) Conflict of Laws §§ 291; 294.

[15]*Id*. § 187.

[16]*Id*. § 188.

[17]*Id*.  *See also Morris v. Health Net of California, Inc.*, 988 P.2d 940, 941–42 (Utah 1999) (discussing factors).

Examining these factors, the Court finds that Oklahoma law must apply.  Pace is an Oklahoma corporation which contracted with RIC, a Delaware corporation with its principal place of business in Colorado.  The parties negotiated the agreement in Colorado and Oklahoma. The contract involved the drilling and development of the Well, which was located in Oklahoma. Because of these considerations, the Court will apply Oklahoma law to the agency issues discussed below.

B.      AGENCY

The Court will assume, for the sake of argument, that RIC and Pace entered into a partnership agreement concerning the development of the Well.[18]  Under Oklahoma law, a partnership is the association of two or more persons carrying on as co-owners of a business for profit.[19]  Under Oklahoma law, each partner is an agent of the partnership.[20]  "There is no master and servant relationship between partners.  Every member of a partnership . . . is an agent for the partnership."[21]  With these fundamental principals in mind, the Court will turn to Pace's argument that Miller acted as RIC's agent and that Miller and Pace's actions should be imputed to RIC as a result of the relationship between them.

---

[18]The Court would note that counsel for RIC also assumed, for the sake of argument, that the parties entered into a partnership agreement during oral argument.  The Court, therefore, need not determine the precise relationship between Pace and RIC.

[19]Okla. Stat. Ann. tit. 54, § 1-202 (2000).

[20]*Id*. § 1-301.

[21]*Wyatt v. Cimarron Ins. Co.*, 235 F.2d 243, 245 (10th Cir. 1956).

1.      MILLER AS AGENT FOR RIC

Pace argues that Miller acted as an agent for RIC.  As noted above, the Court has

previously found that Miller was an agent of Pace and that Miller contacted Plaintiff in June

1999 to convince Plaintiff to raise capital for the Well from Utah investors.  The Court found that

Miller and Pfannensteil met with Plaintiff and other Utah investors in order to convince them to

invest in the Well.  The Court also found that Plaintiff and the investors relied upon

representations made at the Utah meeting and invested $176,000 in the Well.  Based on these

findings, the Court found that it had personal jurisdiction over Pace and Miller.  The question

before the Court presently is whether Miller was acting as RIC's agent during his contacts with

Utah.

Pace has presented no evidence to support their argument that Miller was an agent for

RIC.  Miller was an employee of Pace.  Pace and RIC entered into an agreement whereby RIC

would prepare and operate the Well and Pace would raise funds for that operation.  To that end,

Pace and Miller solicited and received funds from Plaintiff and other Utah investors.  There is no

evidence that RIC participated in these fund raising activities, other than being named in a

prospectus given to the Utah investors.  There is no allegation that they directed Miller and Pace

to solicit funds in Utah.  Additionally, the only funds RIC received from Utah were funneled

through Pace.  Furthermore, there is an unsigned contract which specifically forbade RIC from

having any contact with the Utah investors and RIC has presented an affidavit stating that the

agreement was fulfilled, even though it was never signed.  There is simply no evidence to show

that Miller acted as an agent for RIC.  Miller's actions are not enough to establish personal

jurisdiction over RIC.

8

Even if Miller had acted as RIC's agent, Pace's argument that this is sufficient for personal jurisdiction is contrary to the partnership and agency law discussed above. Miller's action may bind the partnership. But, as will be discussed in more detail below, his actions will not be considered the actions of the individual partners for purposes of personal jurisdiction.

2.       MILLER AND PACE'S ACTIONS

Pace also argues that their actions, as well as the actions of Miller, should be imputed to RIC as a result of their relationship.

In 1969, the Tenth Circuit held that the actions of one partner in a partnership made all other partners subject to personal jurisdiction.[22] *Intercontinental Leasing* involved a Kansas long-arm statute which applied when a defendant, in person or through an agent or instrumentality, transacted business in the state.[23] The Tenth Circuit held that "through the instrumentality of the partnership, the individual partners purposefully availed themselves of the privilege of conducting business activities in Kansas and invoked the benefits and protections of its laws to satisfy their personal economic desires."[24] The court held that these activities were sufficient to invoke the state's long arm statute and to subject them to personal jurisdiction.[25]

*Intercontinental Leasing* is distinguishable from the case currently before the Court because there is no evidence that RIC used the instrumentality of the partnership to purposefully avail itself of the privilege of conducting business in Utah. Even if *Intercontinental Leasing*

---

[22]*Intercontinental Leasing, Inc. v. Anderson*, 410 F.2d 303, 305 (10th Cir. 1969).

[23]*Id*. (citing Kan. Stat. Ann. § 60-308(b)).

[24]*Id*.

[25]*Id*.

cannot be distinguished, however, its holding has been limited by subsequent Supreme Court cases.

In 1980, the Supreme Court held that the minimum contacts test set out in *International Shoe* "must be met as to each defendant."[26] Some courts have interpreted *Rush* as standing for the proposition that "a partner's action may be imputed to the partnership for the purpose of establishing minium contacts, but ordinarily may not be imputed to the other partners."[27] The Tenth Circuit has not ruled on this issue, nor has it explicitly overturned its decision in *Intercontinental Leasing*. But the Tenth Circuit has recently stated that "[g]enerally speaking, specific jurisdiction must be based on actions by the defendant and not on events that are the result of unilateral actions taken by someone else."[28] Further, the Tenth Circuit has stated that "in order to resolve the jurisdictional question, a court must undertake a particularized inquiry as to the extent to which the defendant has purposefully availed itself of the benefits of the forum's laws."[29]

The Court finds that the Tenth Circuit's decision in *Intercontinental Leasing* has been limited by the Supreme Court's ruling in *Rush*. As a result, RIC's mere participation in a partnership with Pace is insufficient to establish minimum contacts. Rather, the Court must find minimum contacts based on RIC's actions, not the unilateral actions of Pace and Miller. The Court will next determine whether such sufficient minimum contacts exist.

---

[26]*Rush v. Savchuk*, 444 U.S. 320, 332 (1980). The Court notes that *Rush* is not a partnership case, the Court finds this distinction unimportant.

[27]*Sher v. Johnson*, 911 F.2d 1357, 1366 (9th Cir. 1990).

[28]*Bell Helicopter*, 385 F.3d at 1296.

[29]*Far West Capital, Inc. v. Towne*, 46 F.3d 1071, 1079 (10th Cir. 1995).

C.      MINIMUM CONTACTS

Pace's final argument in support of personal jurisdiction over RIC is that RIC had sufficient minimum contacts with Utah.  Pace points to a number of activities in support of its argument, including: RIC's partnership with Pace, RIC's authorizing Pace to raise money for the Well; RIC being featured in a prospectus given to the Utah investors; and RIC receiving funds from Pace for its work on the Well, which Pace had received from the Utah investors.

The Court finds that none of these activities provide sufficient minimum contacts with Utah to justify the Court exercising personal jurisdiction over RIC.  There is no evidence that RIC purposefully availed itself of the privilege of conducting activities within Utah.  Therefore, the Court cannot find that it has personal jurisdiction over RIC.

## IV.  CONCLUSION

It is therefore

ORDERED that Third-Party Defendant RIC's Motion to Dismiss for Lack of Personal Jurisdiction (Docket No. 47) is GRANTED.

DATED   January 27, 2006.

BY THE COURT:

_____
TED STEWART
United States District Judge